## Brian WILBURN d/b/a Brian Wilburn & Associates, Plaintiff,

v.

## JACK CARTWRIGHT, INC., Defendant.

### No. 79–C–338.

United States District Court,
E. D. Wisconsin.

May 28, 1982.

On Motion for Attorney fees
July 15, 1982.

---

Prieve, Meyer & Elser by Albert C. Elser, II and John A. Meyer, Milwaukee, Wis., for plaintiff.

Michael, Best & Friedrich by David J. Cannon and Charles P. Graupner, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiff brought this action under the Wisconsin Fair Dealership Law (FDL), Wis.Stat. § 135.01 *et seq.*, alleging that his termination as a manufacturer's representative of the defendant violated the statute.

The case was tried to the court in February, 1981; an extensive decision on the merits was issued. *Wilburn v. Jack Cartwright, Inc.*, 514 F.Supp. 493 (E.D.Wis.1981) *(Wilburn)*. The plaintiff prevailed on the major contentions of his case; the pertinent concluding orders read:

"Therefore, IT IS ORDERED that the defendant be and hereby is permanently enjoined from terminating the plaintiff without first complying with the requirements of sections 135.03 and 135.04, Wis. Stats.

"IT IS ALSO ORDERED that judgment be entered in favor of the plaintiff against the defendant for the sum of $10,650." *Id.* at 500.

In an order dated July 8, 1981, I awarded the plaintiff attorney's fees in the amount of $12,904.67.

The defendant appealed. However, prior to oral argument on the appeal, the Wisconsin supreme court issued an opinion regarding the applicability of the FDL to manufacturer's representatives. *Foerster, Inc. v. Atlas Metal Parts Co.*, 105 Wis.2d 17, 313 N.W.2d 60 (1981). The court of appeals for this circuit then reversed the decision in favor of the plaintiff at bar and remanded the action to this court "for further proceedings and consideration in light of *Foerster.*" *Wilburn v. Jack Cartwright, Inc.*, 676 F.2d 698 (7th Cir. 1982). The parties agree that no further evidentiary hearings are necessary on this issue. They have submitted briefs on *Foerster's* effect on this case, and this opinion shall constitute the court's findings pursuant to the mandate of the court of appeals.

In *Foerster*, the plaintiff had a one-year "sales agreement" with the defendant; the plaintiff was

"... to 'help promote the sale of contract metal stampings manufactured by Atlas' and Atlas agreed to pay Foerster a commission on all sales Atlas made originating through Foerster's efforts to solicit accounts." *Id.* at 20, 313 N.W.2d 60.

Atlas supplied Foerster with advertising materials and business cards, but Foerster was not required to expend any money for

advertising Atlas products nor was it required to maintain an inventory of them. The state court said:

"Once a Foerster client demonstrated an interest in purchasing Atlas products, Atlas assumed total control of the transaction including the estimating, quoting, acceptance, rejection or approval of all orders, the negotiation of the terms of sales, credit arrangements and assumption of credit risks, along with the responsibility for all collections. Atlas also assumed the responsibility of shipping the orders having Foerster, Inc., do the follow-up work in terms of servicing the customer." *Id.* at 20, 313 N.W.2d 60.

The state court then looked to the statute's definition of dealership:

" 'Dealership' means a contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise." Wis.Stat. § 135.02(2).

*Foerster* concluded that this definition was ambiguous, in part because three of the branches of this federal district court had reached differing conclusions about whether manufacturer's representatives were dealers. *Compare Al Bishop Agency, Inc. v. Lithonia,* 474 F.Supp. 828 (E.D.Wis.1979) (Warren, J.) and *Wilburn, supra, with E. A. Dickinson & Assoc. v. Simpson Electric Co.,* 509 F.Supp. 1241 (E.D.Wis.1981) (Reynolds, C. J.). The court also noted that the statute's definition of dealership was similar to an unspecified definition of "franchise" and stated that the similarity "makes it clear that the 'dealership' definition was intended to define those businesses similar in nature to 'franchises.' " *Id.* at 24, 313 N.W.2d 60.

The state court also looked to a press release issued by the Wisconsin governor's office at the time an earlier version of the bill was introduced in the state legislature. The court concluded:

"The description [in the press release] of the businesses which the Fair Dealership Law was intended to cover indicates that the law was meant to protect only those small businessmen who make a substantial financial investment in inventory, physical facilities or 'good will' as part of their association with the grantor of the dealership and is, thus, consistent with the common or accepted perceptions of the words franchise or dealership. It is these types of businesses whose economic livelihood would be imperiled by the termination of their dealership without good cause and adequate notice. *None of the businesses mentioned in this description resembles the type of manufacturer's representative business involved in this case.*" *Id.* at 24, 313 N.W.2d 60 (emphasis added).

The defendant argues that *Foerster* compels reversal of the judgment in favor of the plaintiff in this case. It emphasizes that *Foerster* greatly restricted the statute's requirement that a dealer must be granted the right to sell or distribute goods or other services or the right to use a trade name. *See Kania v. Airborne Freight Corp.,* 99 Wis.2d 746, 763, 300 N.W.2d 63 (1981). The defendant argues that when the principles of *Foerster* are applied to this case the conclusion must be that the plaintiff is not a dealer.

The *Foerster* decision is a significant interpretation of the FDL which must be applied by this court. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, even if the rule in *Foerster* is closely followed, I do not believe that it dictates a different result in this case. In the first place, *Foerster* plainly did not turn on the use of the label "manufacturer's representative." The emphasized portion of the above quotation suggests that the court was looking to the organization of business relationship between the purported dealer and its grantor. *Foerster* expressly rejected the plaintiff's effort to use *Wilburn* and *Al Bishop* to

support its claim, stating that these two cases were factually distinguishable from the *Foerster* situation. *Id.* at 27, 313 N.W.2d 60. Nevertheless, the defendant argues that the *Foerster* court was ignorant of the record in this case.

I do not agree that re-examination of the record in this case in light of *Foerster* requires a different result. In *Wilburn*, I found that the plaintiff did "sell" the defendant's products within the meaning of the FDL. *Id.* at 498. I stated:

"I also find the defendant's argument regarding sales to be a strained reading of the statute's language. It is not disputed that the actual orders were sent to the defendant. However, those orders were developed as a direct result of the plaintiff's efforts. Mr. Wilburn visited the customer, discussed the customer's needs, worked out the custom features of the order, and established the price to be charged through the use of the various discount plans he was authorized to use. He also frequently prepared the order forms the customer sent to the defendant." *Id.*

The above quote paraphrases the more detailed discussion of the factual background of the case. *Id.* at 494–96. The portion of that discussion that is crucial to my finding that the plaintiff sold the defendant's goods was quoted at length in *Foerster* to distinguish the functions of that manufacturer's representative from those of the plaintiff at bar. *Foerster, supra*, at 28, 313 N.W.2d 60.

The defendant argues that *Foerster* dictates a finding that the plaintiff did not "sell" because only the defendant could accept an order. The defendant points to a passage of *Foerster* which sets forth examples of the right to sell to demonstrate that the *Foerster* plaintiff did not do so. *Id.* at 26, 313 N.W.2d 60. However, I was aware of the defendant's policy regarding orders when I determined that the plaintiff at bar did in fact sell, and that policy is plainly stated in *Wilburn*.

The record reveals that the plaintiff did everything to sell the defendant's products but give final approval of the order. This omission is not controlling; a grantor should not be permitted to escape coverage under the FDL by so simple an artifice. I do not read the *Foerster* passage cited by the defendant to be an all-encompassing definition of the right to sell. Significantly, *Foerster* contains no criticism whatsoever of the finding that Mr. Wilburn sold Cartwright products, nor does it challenge the similar finding in *Al Bishop* on which I relied. The *Foerster* court did not hesitate to "question" *Wilburn* and *Al Bishop* on another issue when it believed that those decisions went beyond Wisconsin law. *See Foerster, supra*, at 31, 313 N.W.2d 60 (quoted *post*). Given *Foerster's* quotation of key factual matters supporting the conclusion that the plaintiff sold the defendant's goods and the notable absence of any direct statement in *Foerster* questioning that finding, I can perceive no reason to alter my finding in *Wilburn*. I find the defendant's other efforts to downgrade Mr. Wilburn's role in the selling to be unpersuasive and unsupported by the record.

In *Wilburn*, I also found that the plaintiff had the right to use the defendant's trademark and other commercial symbols. *Id.* at 497. I based this conclusion on the technique the defendant used to promote its product; Mr. Wilburn carried brochures and catalogs to the various customers of the defendant. The defendant permitted him to affix small stickers to these catalogs, listing his name and other information. Thus Mr. Wilburn was closely identified with the defendant; I stated: "Within [the plaintiff's seven-state] territory, the plaintiff was in fact Jack Cartwright, Inc. The customers rarely, if ever, saw any other representatives of the defendant; customers conducted most of their business with the defendant through the plaintiff." *Id.* at 498. The plaintiff also advertised the defendant's products in his territory on one or two occasions. *Id.* at 495.

The manufacturer's representative in *Foerster* did none of these things. In *Foerster*, the plaintiff could only point to its business cards, which prominently displayed

the Foerster name and simply noted the Atlas affiliation. *See Foerster, supra*, at 30, 313 N.W.2d 60. The prominence of the respective names is exactly the opposite in the case at bar. In addition, the plaintiff made far more use of the defendant's logo, etc., than did the *Foerster* plaintiff.

*Foerster* did state:

"To the extent that *Wilburn v. Jack Cartwright, supra*, and *Al Bishop v. Lithonia, supra*, imply that the mere use of business cards is sufficient to satisfy the sec. 135.02(2) requirement of a right to use the grantor's trademark, we question those decisions based on the limited facts set out in the opinions." *Id.* at 31, 313 N.W.2d 60.

I did not base my finding that the plaintiff had the right to use the grantor's trademark simply on the use of business cards; far more is included in the *Wilburn* holding than the mere use of business cards. I persist in the *Wilburn* holding that the plaintiff had the right to use the defendant's trademark and other materials within the meaning of the FDL.

The defendant attempts to minimize the plaintiff's advertising and other activity by arguing that it did not happen very often. The record reveals that on occasion, the defendant's products were shipped to the plaintiff who then delivered them to the purchaser. He also had a role in reviewing customer complaints and arranging repairs. He did informal credit checks of customers. He at times helped in the collection of delinquent accounts; this was especially important to him, for he received no commission on a sale that was not properly paid by the customer. The fact that he did not do all these things all the time for every customer is hardly dispositive. The crucial point is that when necessary he did do all these things and many more. The totality of the relationship between the plaintiff and the defendant is important. Mr. Wilburn did not in any sense perform the very limited role of the manufacturer's representative in *Foerster*.

As *Foerster* notes, the FDL was designed to protect the small businessman whose economic livelihood would be imperiled by the termination of his dealership. The plaintiff had invested thousands of hours in his representation of Jack Cartwright; he built sales in the territory from virtually nothing to a substantial level. While he did handle other products, the defendant's line was one of his premier lines, and the other products did not compete with it. Despite all the plaintiff's efforts, the defendant with virtually no warning and no notice at all terminated the relationship. I previously held that the plaintiff was a dealer in the sense of the statute and subject to the protections of the FDL; I now find that that conclusion is accurate according to the words of the statute as interpreted by *Foerster*. I also believe that when the record is viewed as a whole this is fully consistent with the broader policy statement embodied by the statute and elaborated in *Foerster*. Accordingly, I reaffirm my earlier findings in *Wilburn* and will direct the clerk to reinstate judgment for the plaintiff.

Therefore, IT IS ORDERED that the clerk be and hereby is directed to reinstate in all respects the judgment previously entered in this case.

### On Motion For Attorney Fees

On June 14, 1982, the plaintiff's attorneys moved for an order allowing attorney's fees in their favor. In an accompanying affidavit, one of the plaintiff's lawyers has itemized their legal services between May 21, 1981, and March 30, 1982, reflecting a total of 87 hours. An award of fees based upon $75.00 an hour is sought by the plaintiff.

The defendant would preclude an allowance of attorney's fees for the services rendered by the plaintiff's counsel in connection with the previous appeal that had been taken to the court of appeals for the seventh circuit. Thus, the defendant argues that the plaintiff is entitled only to fees for the time expended after the remand order of January 13, 1982 (23 hours). The defendant cites no authorities in support of its proposition, and it would appear to me to be contrary to the concept of reasonable attorney's fees as reflected in the recent decision of the court of appeals for this circuit in *Spray-Rite Service Corporation v. Monsanto Company*, 684 F.2d 1226 (7 Cir. 1982). In

that case the court of appeals determined (at p. 1250) that attorney's fees were allowable in connection with the time expended by counsel in litigating the question of attorney's fees.

In the absence of any direct authority on the narrow issue as to whether this court may award attorney's fees in connection with legal services related to the determination of an appeal, I believe it is appropriate for the district court to grant such fees.

The pendency of a second appeal, which the defendant has filed, does not deprive this court of jurisdiction to resolve the question of attorney's fees. *Terket v. Lund*, 623 F.2d 29 (7th Cir. 1980).

After the remand in this case from the court of appeals, this court received briefs concerning the issues on the remand and filed a written decision and order on May 28, 1982. In that decision and order, it is clear that the plaintiff was the prevailing party and therefore, in my opinion, is entitled to an award of reasonable attorney's fees. I believe that the sum of $5,000 represents such figure.

Therefore, IT IS ORDERED that the plaintiff's motion for attorney's fees be and hereby is granted.

IT IS ALSO ORDERED that such fees be and hereby are set in the amount of $5,000.