**JOHN MAYE COMPANY, INC., Plaintiff,**

v.

**NORDSON CORPORATION, Defendant.**

**Civ. A. No. 90–C–1015.**

United States District Court, E.D. Wisconsin.

Dec. 14, 1990.

Rodney W. Carter, Schober & Radtke, New Berlin, Wis., for plaintiff.

James R. Scott, Lindner & Marsack, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### BACKGROUND

On October 15, 1990, defendant Nordson Corporation ("Nordson") removed this action from the Waukesha County Circuit Court to this court. The plaintiff John Maye Company, Inc. ("John Maye") commenced this action in state court seeking a preliminary and permanent injunction prohibiting Nordson from terminating John Maye's alleged dealership. Prior to Nordson's removal to this court, the state court had granted John Maye's motion for a temporary restraining order maintaining the status quo between John Maye and Nordson. Removal of this action was proper pursuant to Title 28 U.S.C. § 1441 because this court has subject matter jurisdiction over the dispute pursuant to 28 U.S.C. § 1332.

On October 23, 1990, this court conducted a status conference with the parties to schedule a preliminary injunction hearing and to determine the appropriate manner in which to maintain the status quo. On the same day, this court signed a temporary restraining order, which the parties had stipulated to and drafted, maintaining the status quo between the parties until the preliminary injunction hearing.

On November 7, 1990, John Maye moved this court to hold Nordson in contempt of the terms and conditions of the temporary restraining order. Nordson opposed this

motion. On December 11, 1990, this court conducted a preliminary injunction hearing and heard oral argument on John Maye's contempt motion. This court denies John Maye's preliminary injunction and contempt motions. In addition, this court provides the parties with thirty (30) days to inform this court as to whether or not a trial in this action is necessary or if either party has appealed this decision. If the parties do not request a trial or appeal within thirty days, then this court will automatically enter judgment in favor of Nordson.

## FINDINGS OF FACT

John Maye is a Wisconsin corporation which sells packaging machinery, and its principal place of business is Waukesha, Wisconsin (Complaint ¶ 1). Nordson is an Ohio corporation which manufactures packaging machinery, and its principal place of business is Westlake, Ohio (Answer ¶ 2). In May 1987, John Maye and Nordson entered into a "Sales Representation Agreement" ("the Agreement") (Complaint Exh. A) [1].

The Agreement: (1) grants John Maye a non-exclusive right to represent Nordson within a defined geographical territory (*Id.* ¶¶ 1–2); (2) obligates John Maye to solicit orders for Nordson's products and to transmit the orders to Nordson (*Id.* ¶ 4(a)-(b)); (3) provides Nordson with the sole authority to accept or reject orders for its products solicited by John Maye [2] (*Id.* ¶¶ 7, 11; Nov. 8, 1990 Maye Dep. at 37); and (4) provides that John Maye will be compensated by the payment of a twenty (20%) percent sales commissions based upon the net invoice price of the Nordson product sold (*Id.* ¶ 8, Exh. D).

On October 1, 1990, Nordson, acting pursuant to the Agreement, notified John Maye that it was terminating the Agreement as of November 5, 1990, and that it would continue to pay commissions for thir-ty (30) days following the termination (Complaint Exh. B). Nordson informed John Maye that it was terminating the Agreement because it planned on initiating a direct sales effort in the territory handled by John Maye (*Id.*).

The president and sole stock owner of John Maye Company, John J. Maye ("Maye"), stated in his November 8, 1990 deposition that: (1) Nordson decides how much it charges for its products (at 32–33); (2) Nordson decides whether or not to extend credit to purchasers and the specifics of the credit arrangements (at 38); (3) Nordson ships the products directly to the customer, and any damage occurring during transit is the responsibility of the shipper, customer, or Nordson (at 39–40); (4) title of the Nordson products, other than two demonstrator units, passes directly from Nordson to the purchaser (at 40); (5) John Maye paid no fee to Nordson for entering into the Agreement (at 41); and (6) John Maye does not pay for the advertising of Nordson products, but instead receives from Nordson, at no charge, sales brochures and pamphlets (at 41–43).

John Maye is a manufacturer's representative for the following companies which also manufacture packaging equipment: Stra-pack, Tytech, EAM, and Soco (Nov. 8, 1990 Maye Dep. at 11, 23–25). John Maye currently leases an office and warehouse facility of approximately 16,000 square feet, and the entrance sign states:

> John Maye Company, Inc., Soco System, Inc., Packaging Equipment, Service and Supplies.

(*Id.* at 50). The warehouse was purchased by Maye in his individual capacity and is leased to John Maye Company for $36,000 annually (Dec. 11, 1990 Maye Testimony). The warehouse building also has a sign on it which states:

---

**1.** The Agreement was originally entered into between Nordson and Maye–Schuman Packing Systems, Inc., which subsequently changed its name to John Maye Company, Inc. (Complaint ¶ 4, Exh. A).

**2.** This court notes that John J. Maye, the President and sole stock owner of John Maye stated in an affidavit that Nordson has never rejected a product order which John Maye obtained (Nov. 9, 1990 Maye Aff. ¶ 16).

JOHN MAYE COMPANY INC.
YOUR SOURCE FOR
TYING MACHINES CONVEYOR SYSTEMS
STRAPPING MACHINES GLUEING SYSTEMS
SERVICE AND SUPPLIES

(Dec. 11, 1990 Hearing Exh. 1). In the common area inside the John Maye office, there are photographs of Nordson's equipment. Potential customers or customers, however, rarely visit the facility (Nov. 8, 1990 Maye Dep. at 48–49). Although John Maye maintains no inventory of Nordson machines, it does maintain an inventory of Nordson spare parts (*Id.* at 44). The spare parts inventory is valued between $1,000 and $1,500 and can be stored in a three-by-five-foot square area (*Id.;* Dec. 11, 1990 Maye testimony).

John Maye performs both warranty and non-warranty service work on Nordson's products. If John Maye performs warranty work, then it is not compensated for the work (Nov. 8, 1990 Maye Dep. at 45–47). Customers seeking non-warranty service work are free to either contact John Maye or Nordson. If John Maye performs non-warranty service work, it bills the customer directly if it decides to charge for the work (*Id.*).

During 1989, John Maye received $92,-616.94 in commission payments from Nordson and had a total operating income of $362,585.17 (Dec. 5, 1990 Scott Aff. Exhs. 101, 102). From January 1, 1990 through September 30, 1990, John Maye received $74,572.84 in commissions from Nordson and had an operating income of $366,454.72 (*Id.*). John Maye employs eleven (11) full-time and one part-time persons, and one of its employees, David Bykowski, spends approximately 95% of his time engaged in selling Nordson's products (Nov. 8, 1990 Maye Dep. at 10; Nov. 8, 1990 Bykowski Dep. at 4–5).

## CONCLUSIONS OF LAW

### I. Preliminary Injunction Standard

The Seventh Circuit Court of Appeals has repeatedly held that a party moving for a preliminary injunction has the burden of establishing:

(1) that he has no adequate remedy at law;

(2) that he will suffer irreparable harm if the injunction is not issued;

(3) that the injunction will not harm the public interest;

(4) that he has a reasonable likelihood of prevailing on the merits; and

(5) that the irreparable harm he will suffer if the preliminary injunction is not granted is greater than the irreparable harm the defendant will suffer if the injunction is granted. *Curtis v. Thompson,* 840 F.2d 1291, 1295–96 (7th Cir.1988) (citing *Brunswick Corp. v. Jones,* 784 F.2d 271, 273–74 (7th Cir.1986) and *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1432 (7th Cir.1986). In the present case, John Maye has not satisfied the requirement that it has a reasonable likelihood of success because this court preliminarily finds that John Maye is not a dealership covered under the Wisconsin Fair Dealership Law.

### A. Wisconsin Fair Dealership Law

Section 135.02(3) of the Wisconsin Statutes defines dealership as it is used in the Wisconsin Fair Dealership Law ("WFDL") as:

"Dealership" means a contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

(1989). The Wisconsin Supreme Court has repeatedly considered the meaning of this section and has held that in order for a business to be considered a dealership under the WFDL the following requirements must be fulfilled:

1. a contract or agreement between two or more persons;

2. by which a person is granted

 a. the right to sell goods or services;

b. the right to distribute goods or services; or

c. the right to use a trade name, trademark, service mark, logotype, advertising or other commercial symbol; and

3. in which there is a community of interest in the business of

a. offering goods or services;

b. selling goods or services; or

c. distributing goods or services at wholesale, retail by lease, agreement or otherwise.

*Bush v. National School Studios, Inc.*, 139 Wis.2d 635, 651–52, 407 N.W.2d 883 (1987) and *Foerster, Inc. v. Atlas Metal Parts Co.*, 105 Wis.2d 17, 25, 313 N.W.2d 60 (1981) (both quoting *Kania v. Airborne Freight Corp.*, 99 Wis.2d 746, 763, 300 N.W.2d 63 (1981).

In the present case, the parties agree that the Agreement between them satisfies the first requirement put forth by the Wisconsin Supreme Court. In addition, John Maye essentially concedes that it does not have the right to distribute Nordson products because it never has possession of them (Dec. 6, 1990 John Maye Memorandum Brief at 21–22 citing *Aida Engineering, Inc. v. Red Stag, Inc.*, 629 F.Supp. 1121 (E.D.Wis.1986)). Thus, the issue is whether or not John Maye had the right to use the Nordson trade name, trademark, service mark, logotype, advertising or other commercial symbol, or the right to sell Nordson products.

*1. Right to Use Nordson Name, Trademark, or Logo*

■ The Wisconsin Supreme Court in *Foerster* held that a business entity must do more than merely use the supplier's trademark or symbol in order to be considered a dealership. 105 Wis.2d at 29–30, 313 N.W.2d 60. The Supreme Court held that the business entity claiming to be a dealership solely because it uses a trade-

mark must be provided with the right to adopt the trademark or symbol as its own:

This extremely limited use of the Atlas name and trademark differs considerably from the use made of the grantor's trademark in the typical "dealership" *intended by the legislation ....* While the product may be that of the grantor, the dealer often uses the trademark to imply that his establishment furnishes the type of quality service associated with the grantor.

In contrast, Foerster, Inc., used the Atlas logo on business cards only for the purpose of informing potential clients of his status without any notation as to the nature of the relationship. *The fact that he was not allowed to adopt the trademark or symbol as his own* is demonstrated by the fact that the card Atlas supplied to Foerster, Inc., identified Foerster in bold type in the center of the card with Foerster's phone number and at the bottom left-hand corner in smaller type identified Atlas with a separate phone number.

*Foerster*, 105 Wis.2d at 29–30, 313 N.W.2d 60 (emphasis added). In the present case, there is no evidence that John Maye was granted the right to adopt the Nordson name, trademark, or logo as its own.

First, the Agreement between Nordson and John Maye states that John Maye agrees:

To recognize the exclusive ownership and right of NORDSON in and to all trademarks, trade names and patents used by NORDSON in connection with any and all PRODUCTS distributed by NORDSON, REPRESENTATIVE further agrees not to make any application for any trademarks or patents on PRODUCTS.

(Complaint Exh. A ¶ 4(g)).[3] Second, John Maye engages in no advertising of Nordson products and does not display the Nordson

---

**3.** John Maye argues that the Agreement authorizes it to use the Nordson trademark because para. 15 requires John Maye to mark with the Nordson trademark any literature it produces advertising Nordson products. This argument is unpersuasive because para. 15 in and of itself

does not authorize John Maye to use the Nordson trademark or logo as its own. *See Foerster,* 105 Wis.2d at 29–30, 313 N.W.2d 60. Moreover, there is no evidence that John Maye ever produced promotional materials or advertisements using the Nordson name, trademark, or logo.

name on its entrance or building signs nor in its yellow page advertisement. Although John Maye distributes Nordson literature, Nordson creates the literature, pays for its publication, and provides it to John Maye without charge. Finally, the business card of the President of John Maye does not utilize the Nordson name nor have the Nordson logo on it (Oct. 19, 1990 McDaniel Aff. Exh. A). Thus, this court concludes that John Maye has not been granted the right to use the Nordson name, trademark, or logo as its own.

### 2. Right to Sell Nordson Products

■ The Wisconsin Supreme Court considers many factors in determining whether or not an alleged dealer has been provided the right to sell a manufacturer's products: (1) is the right contained in the agreement between the parties; (2) does the alleged dealer take title or possession of the products; (3) does the alleged dealer have an inventory of the products; (4) does the alleged dealer have the right to commit the manufacturer to the sale; (5) does the alleged dealer have the right to determine or negotiate the product's purchase price; (6) does the alleged dealer make credit determinations or credit arrangements concerning the customer; and (7) is the alleged dealer responsible for shipment of the product or collecting the purchase price. *Foerster*, 105 Wis.2d at 26–29, 313 N.W.2d 60; *Bush*, 139 Wis.2d at 654, 407 N.W.2d 883.

In the present case, the Agreement between John Maye and Nordson does not provide John Maye with the right to sell Nordson products. John Maye does not take possession or title of the products it solicits orders for; John Maye maintains no inventory of Nordson products;[4] John Maye cannot commit Nordson to selling a product because the Agreement provides Nordson with the sole authority to accept or reject orders;[5] John Maye does not determine the purchase price of Nordson products and it cannot negotiate the purchase price without obtaining Nordson's approval; John Maye does not make credit determinations or arrangements concerning the customers purchasing Nordson products; and, finally, Nordson, not John Maye, is responsible for the shipment of the Nordson products and collecting the purchase price. Thus, this court concludes that John Maye did not have the right to sell Nordson products.

As this court finds that John Maye does not have the right to sell or distribute Nordson products, nor the right to use the Nordson name, trademark, or logo, there is no reason to consider whether or not there is a community of interest between John Maye and Nordson. *Foerster*, 105 Wis.2d at 30, 313 N.W.2d 60; *Aida*, 629 F.Supp. at 1124, 1127. In addition, as this court preliminarily finds that John Maye is not a dealership as defined in the WFDL, the likelihood of John Maye obtaining the protection of the WFDL at the conclusion of a trial are extremely slim. Thus, John Maye's motion for a preliminary injunction is denied.

### II. John Maye's Contempt Motion

John Maye has moved this court to find Nordson in contempt of this court's October 23, 1990 restraining order. John Maye alleges that Nordson has violated the October 23rd order by (1) failing to provide "Foammelt" systems to either John Maye or its customers, specifically Bemis Manufacturing ("Bemis"), and (2) disclosing to officials at Oscar Mayer, Inc. ("Oscar Mayer") that Nordson had terminated John Maye as a representative of Nordson.

---

**4.** The $1,000 to $1,500 inventory of Nordson spare parts is insignificant when compared to the dollar volume of Nordson products which John Maye solicited orders for in 1989 and 1990, approximately $463,084.70 and $372,-864.20 respectively (Dec. 5, 1990 Scott Aff. Exhs. 101, 102). The dollar volume of Nordson products solicited by John Maye was determined based on the premise that the commissions received by John Maye, $92,616.94 in 1989 and $74,572.18 in 1990, were 20% of the net invoice price of the Nordson products (Complaint Exh. A at Exh D).

**5.** Although Nordson appears to have never rejected a purchase order placed by John Maye, this does not eliminate Nordson's right to do so.

John Maye concedes that the Foammelt systems in question are specifically excluded from the list of products covered by the Agreement and that the language of the Agreement does not require Nordson to provide these systems to John Maye or customers it solicits (Nov. 6, 1990 Bykowski Aff. ¶ 5). John Maye, however, argues that in December 1989 the Agreement was orally modified by representatives of Nordson in a manner which required John Maye to sell these systems (*Id.* at ¶ 7).

Nordson, on the other hand, claims that it informed John Maye's attorneys, at the time the October 23rd order was being drafted and agreed to, that it would not sell these systems to John Maye because they were outside the scope of the Agreement (Dec. 5, 1990 Scott Aff. ¶ 6; Dec. 6, 1990 Sujak Aff. ¶¶ 3–5). In addition, Nordson has subsequently stated that if the transaction involving the Foammelt systems is completed with Bemis, then it will pay John Maye a commission on the sale (Dec. 6, 1990 Sujak Aff. ¶ 5).

 First, since Nordson has indicated that it will sell the Foammelt systems to Bemis and pay John Maye a commission, it appears that this portion of the motion for contempt is moot. Second, and more importantly, the Seventh Circuit Court of Appeals has held that the language of a restraining order must be specific so that the enjoined party knows exactly what it is restricted from doing. *American Can Co. v. Mansukhani*, 742 F.2d 314, 332 (7th Cir.1984). In the present case, this court had the parties stipulate to and draft the October 23rd restraining order precisely for the purpose of avoiding any dispute as to what Nordson was prohibited from doing. This restraining order specifically states that Nordson:

> shall continue to transact business with [John Maye] in accordance with the terms and conditions set forth in the Sales Representation Agreement attached to [John Maye's] Complaint as Exhibit A;

(Oct. 23, 1990 Order ¶ 1(a)). If John Maye desired to incorporate the alleged oral modification of the Agreement pertaining to

Foammelt systems, then language reflecting this modification should have been included in the October 23, 1990 restraining order which John Maye helped draft and stipulated to.

Finally, this court is unpersuaded by John Maye's argument that the December 1989 oral modification to the Agreement was covered in the restraining order by the language stating that Nordson "shall continue to ship orders in the manner that occurred prior to October 1, 1990." (Oct. 23, 1990 Order ¶ 1(d)). As noted earlier, the language of injunctions must be specific, and therefore the language regarding shipping pertains only to the manner in which Nordson ships products to the customers John Maye solicits. *American Can Co.*, 742 F.2d at 332.

John Maye also argues that Nordson is in contempt of the October 23, 1990 restraining order because officials at Oscar Mayer were under the impression that John Maye had been terminated as a Nordson representative (Nov. 28, 1990 Bykowski Aff. ¶¶ 4–5). The October 23, 1990 order prohibited Nordson from disclosing that it was attempting to terminate John Maye as a representative (Order ¶ 1(b)). John Maye, however, has not indicated how the Oscar Mayer officials became aware that Nordson was attempting to terminate its relationship with John Maye. First, this court notes that this entire proceeding is public information. Second, this court notes that the current record is based on hearsay and does not establish that Nordson told Oscar Mayer officials, after the October 23rd order, that it was terminating John Maye. Finally, the record also does not indicate that Oscar Mayer's awareness of Nordson's desire to terminate John Maye has caused John Maye any damage.

IT IS THEREFORE ORDERED that plaintiff John Maye Company Inc.'s motion for a preliminary injunction prohibiting defendant Nordson Corporation from terminating the Sales Representation Agreement between the two corporations is DENIED.

IT IS FURTHER ORDERED that plaintiff John Maye Company Inc.'s motion for

an order holding defendant Nordson Corporation in contempt of this court's October 23, 1990 restraining order is DENIED.

IT IS FURTHER ORDERED that on or before thirty (30) days from the date of this order the parties shall inform this court as to whether or not a trial in this action is necessary or if they have appealed this decision. If a trial is not requested and this decision has not been appealed, then this court will automatically enter judgment in favor of Nordson.