YOUNG and others, Appellants, vs. GROSNICK and wife, Respondents.

*December 1—December 30, 1949.*

For the appellants there were briefs by *Benton, Bosser, Becker, Parnell & Fulton,* and oral argument by *David L. Fulton.*

For the respondents there was a brief by *Eberlein & Eberlein* of Shawano, and oral argument by *Frederick C. Eberlein.*

FRITZ, J.  The evidence on the trial established that defendants had listed their farm and personal property thereon for sale as specified in the listing contract between the United Farm Agency and defendants.  On June 2, 1946, A. N. Brunner, representing the Farm Agency, negotiated a contract for the sale by defendants of their farm and personal property in Shawano county to the plaintiffs, Roy and Vernon Young and their wives, at the purchase price of $33,500, and plaintiffs. made a down payment of $2,500 to defendants.  The written contract, dated June 2, 1946, and duly signed by the plaintiffs and the defendants, provided that on the delivery of a land contract, $8,000 additional cash should be paid by plaintiffs to the defendants; that a deed should. be delivered on or before July 1, 1946; that the

balance of the purchase price should be secured by a mortgage; and that,—

"It is mutually agreed that should either party hereto fail or neglect to duly perform his part of this agreement he shall forthwith pay and forfeit as liquidated damages to the other party a sum equal to ten per cent of the agreed price of sale, except that if said agreed price is less than $2,000 said sum shall be $200."

The plaintiffs resided in Dane county. Roy Young had $4,000 in cash available to pay on the purchase price and upon his return to Madison he notified his employer that at the end of June he would quit his employment and would vacate the home which he was renting from him. Vernon Young owned his home in Madison, which was subject to a mortgage of $2,200, and which he expected to sell for $8,000; and on June 3d he entered into an agency contract with a realty company under which he listed his home for sale for a period of six months from June 3d at the price of $8,200; and he intended thereby to raise money to make the further down payment of $8,000 on the farm as required by the contract on or before July 1, 1946. On about June 5th Brunner was informed by the defendant Mrs. Grosnick that she would not go through with the sales contract because the down payment of $10,500 was less than the $15,000 down payment prescribed in the original listing contract with the Farm Agency. This information Brunner immediately communicated to the plaintiffs by telephone. Brunner on June 6th, after further conferences between William and Emma Grosnick and their attorney, R. H. Fischer, telephoned the plaintiffs advising them that the deal was on again and Mrs. Grosnick would go through with it. On June 7th William Grosnick informed Brunner that his wife had again changed her mind and would not go through with the sale unless the $15,000 down payment originally contemplated would be paid. Brunner telephoned that information to the plaintiffs, and told them that Mrs. Grosnick

wanted to consult with her son who lived in the east and would not be home until July 3d. On June 18th Brunner, in a telephone conversation with Roy and Vernon Young, told them that when the son came on July 3d, Mrs. Grosnick would decide whether she would go through with the deal; that the Youngs were quite insistent on going through with the sale, and encouraged Brunner to get it closed up, and he tried to encourage them to give Mrs. Grosnick the privilege to wait until they talked to her son and could possibly get the co-operation of everybody and work the deal out. The plaintiffs engaged Attorney Roy C. Heggestad at Madison, who, on June 21st, in letters to Brunner and Fischer asked for the abstract and the form of the land contract; and in a letter to Fischer, dated June 26th, Heggestad stated that under the present arrangement there are two things for his clients to look forward to:

"(1) To consider the contract agreement as being in default by Mr. and Mrs. Grosnick;

"(2) To wait until such time as they are willing to make a conveyance, according to the terms of the contract and take possession at a later date than that specified in the contract, which, in effect, will make a new contract.

"As soon as we have thoroughly discussed this matter, I will let you know what course they have decided to take."

Fischer replied thereto on June 27th, and on that date Heggestad wrote a letter to Fischer in which he stated,—

"I have had a conference with the purchasers and they are desirous of knowing as soon as possible what is expected of them. . . . However, I felt that in all due justice and in view of the fact that receiving a letter from you and Mr. Brunner, it will be impossible to have possession as of July 1. If, in any event that you do succeed in obtaining the necessary papers on or before July 1, I will expect you to get in touch with me, so that we can execute the papers and comply with the terms of the agreement to buy and sell. If you should have the fortune of having Mr. and Mrs. Grosnick come in your office on Monday, that you will call me immediately,

so that we can make the necessary changes, as we have also discussed the question of emergency in that respect. If it should be necessary for them to come, we can drive up there in a matter of a short time and complete the transaction on Monday, but I would appreciate a little advance notice if it is possible for you to do, so that it cannot be considered that we will be in default in not being ready to proceed on July 1."

On July 2d Heggestad wrote and also telegraphed to Fischer advising defendants that plaintiffs elected to declare the contract in default and that they elected to have their money returned and the conditions of the contract in case of default fully complied with. Brunner returned the down payment of $2,500 to the plaintiffs in July, 1946.

Plaintiffs in their complaint seek the recovery of $3,350 as the ten per cent liquidated damages under the provision in the contract. Defendants by their answer put in issue the allegations of the complaint as to breach of the contract, and they counterclaimed for the liquidated damages provided for by the contract. Upon the evidence on the trial the court found,—and upon our review of the record it is our conclusion that there is credible evidence to sustain the court's findings,—

That time was not of the essence of the contract. That neither of the parties to this action considered time as of the essence of this contract and they carried on negotiations clearly indicating that neither regarded time as of the essence of this contract. That the defendants were not guilty of any anticipatory breach of the said contract, and if their conduct could be construed as an anticipatory breach, that the plaintiffs did not avail themselves of the right to consider the contract terminated, but failed to treat the said contract as an anticipatory breach and lead the defendants into the belief that the contract was extended up to and including July 3, 1946. That said belief and conduct and reliance thereupon on the part of the defendants was reasonable and was contributed to and caused by the conduct of the plaintiffs and they are now estopped from claiming a default of the contract on the part of the defendants on July 1st. That in any event,

the performance of this contract on July 3, 1946, by the defendants would have been within the contemplation of the parties and that the defendants in no manner breached the contract on their part. That the plaintiffs were at no time ready, willing, and able to comply with the terms of this contract. That any inability on the part of the plaintiffs to perform the conditions of the contract on their part was in no manner caused or induced by the conduct of the defendants. That on July 2, 1946, the plaintiffs demanded a return of the sum of $2,500 paid down as earnest money and said sum was paid to plaintiffs before the commencement of this action, namely, July 13, 1946. That prior to July 3, 1946, the plaintiffs refused to comply with the terms of said contract and in view of the conduct of the plaintiffs in sending their telegram of July 2d and their letter of July 2d it would have been a useless and idle act for the defendants to perform or tender performance at that time.

The court concluded upon its findings that the defendants are entitled to judgment dismissing the complaint and the plaintiffs are entitled to judgment dismissing the counterclaim.

In the telephone conversations between Brunner and the plaintiffs and the correspondence between Heggestad and Fischer and Brunner, the plaintiffs at no time, until Heggestad's letter and telegram of July 2d, indicated that they considered the contract breached by defendants. As late as June 27th, Heggestad, representing the plaintiffs, wrote to Fischer, defendants' attorney, indicating that the plaintiffs were ready to carry through with the deal, and suggested in his letter that should the defendants come into Fischer's office on Monday (which was July 1st), that Fischer immediately call Heggestad so that they could drive up that day and complete the transaction. In view of the matters stated by Heggestad, it is evident that until July 2d the plaintiffs had not considered or concluded to claim that defendants had breached their contract. There had not been an unequivocal refusal by Mrs. Grosnick to comply with the contract nor had the plaintiffs regarded the information conveyed

to them by Brunner and Fischer as constituting such refusal. Likewise neither in the conversations between the plaintiffs and Brunner and Fischer and Heggestad, nor in the correspondence between the attorneys of the parties was there any statement that plaintiffs would demand that performance be made on or before July 1st, and that by defendants' failure to do so plaintiffs would consider the contract breached. Until Heggestad's letter and telegram of July 2d the correspondence indicated rather that the plaintiffs were willing to wait until July 3d, when the defendants' son would return from the east, to see whether the transaction would go through or not. It was not until when, on the afternoon of July 2d, there was transmitted to defendants' attorney Heggestad's letter and telegram of that date stating that plaintiffs elected to declare the contract in default and to have their money returned, and the conditions of the contract in case of default fully complied with, that the defendants knew that the negotiations for an extension of two days after July 1st would no longer be considered. The facts and circumstances stated above warranted the statement that,—

"The court is impressed, in considering all of the correspondence offered in evidence, that the plaintiffs were playing a waiting game until July 1st had passed, leading the defendants to believe by their actions and correspondence that there was no objection to waiting until July 3d to determine whether the contract would be approved by the defendants' son, and then as soon as that day had passed promptly giving notice that the defendants were in default and electing to claim the stipulated damages of $3,350. The plaintiffs could not both keep the contract alive claiming its validity and at the same time treat the contract as breached. *Woodman v. Blue Grass Land Co.* 125 Wis. 489.

"It occurs to the court that there was some duty upon the plaintiffs to inform the defendants that they considered time as of the essence of the contract and that if they failed to live up to that contract on or before July 1st that the contract would be breached and not wait until that day had passed and then suddenly advising the defendants of the plaintiffs'

election to treat the contract as breached and demanding damages."

In *Woodman v. Blue Grass Land Co.* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920, the plaintiff sought to recover earnest money, which he had paid to the defendant upon an executory contract for the conveyance of land, on the ground of failure of performance by the defendant. The defense was, in substance, that the plaintiff repudiated the contract before the expiration of the time within which it might be performed and thereby forfeited any claim to the return of the earnest money. The trial resulted in a judgment for defendant. In affirming that judgment on an appeal, this court stated, (p. 494) :

"The earnest money was voluntarily paid by the plaintiff at the inception of the contract as a part payment thereon and was rightfully in defendant's possession. The plaintiff repudiated the contract while there was still ample time for the defendant to perform. By that act he did not and could not affect the character of the acts which had already been performed in carrying out the contract, and manifestly could not reinvest himself with the title to the earnest money."

On rehearing the court stated, (p. 495) :

"The law with regard to an anticipatory breach of an executory contract doubtless is that the other party must treat it as a breach, and that if he do not do so, but continue to demand performance, he will be held to have kept the contract alive for the benefit of both parties. In other words, he cannot treat the repudiation both as a breach and as no breach at the same time. Benjamin, Sales (7th Am. ed.), sec. 568; Anson, Contracts (2d Am. ed.), 371; 9 Cyc. 698, 699; *Dingley v. Oler,* 117 U. S. 490, 6 Sup. Ct. 850."

To the same effect is the statement in *Washburn-Crosby Co. v. Kubiak,* 175 Wis. 291, 294, 295, 185 N. W. 162,—

"Assuming, but only for the purpose of the present disposition of this case, that the letter of December 4th quoted above indicated such a refusal by defendant to carry out the contract that it might be treated by the plaintiff as an an-

ticipatory breach thereof, yet there is nevertheless lacking an essential element which must exist before plaintiff could be entitled to recover damages upon such theory, it being the one upon which judgment was rendered in the court below. The fact alone that one party to such a contract indicates his intention of not carrying out his part thereof prior to the time of performance is not sufficient to destroy the contract relationship theretofore existing. The effect of such renunciation by the one is to give the other party an opportunity to then treat it as thereby canceled or nevertheless elect to hold and consider the contract still in force and insist upon performance by the one so renouncing, or tender performance on his own part and thereafter seek the appropriate remedy for either. But there must be an election in some manner of one or the other alternative. Where, as in this case, the plaintiff as seller gives no recognition on his own part of the renunciation to the buyer by responding in any way thereto and proceeds, in spite of such repudiation, to ship the goods in alleged compliance with the contract, he must necessarily be held to have thereby waived his right to treat such action by the buyer as an anticipatory breach." See also *Voss v. Northwestern Nat. L. Ins. Co.* 137 Wis. 492, 500, 118 N. W. 212.

Heggestad's letters of June 21, 1946, to Fischer and Brunner, respectively, and of June 26th and June 27th to Fischer, and likewise the letters to Heggestad written on June 24th by Brunner and Fischer and also on June 27th by Fischer, disclose that neither plaintiffs nor the defendants had then considered the contract repudiated by the parties thereto. On the contrary, the only inference that can be drawn from those letters is that the plaintiffs considered the contract to be in full force and effect; and that they as well as defendants considered it to be binding throughout the entire period from June 2d until July 1st. Since no anticipatory breach was committed and became effective, there continued to be in effect the contract for the plaintiffs to perform on July 1st by tendering the balance of the down payment; and as the covenants in the contract are concurrent, performance in that respect by plaintiffs was necessary in

order to place the defendants in default. But, as clearly appears, although plaintiffs were willing they were neither ready nor able to make the required payment of $8,000 on July 1st, and under the circumstances on that date, neither of the parties then indicated any intention to treat or consider their obligations under the contract terminated on July 1st. As plaintiffs seek to recover the stipulated liquidated damages because of defendants' nonperformance on July 1st, without the plaintiffs themselves being ready and able to perform, they are not entitled to such recovery for the reasons stated in the *Woodman,* the *Washburn-Crosby Co.,* and the *Voss Cases, supra.*

*By the Court.*—Judgment affirmed.