Robert L. QUIRK, Plaintiff,

v.

ATLANTA STOVE WORKS, INC., Defendant.

No. 80–C–1094.

United States District Court, E. D. Wisconsin.

April 22, 1982.

Albert C. Elser, Prieve, Meyer & Elser, Milwaukee, Wis., for plaintiff.

Michael A. Bowen, Foley & Lardner, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is a diversity action in which plaintiff Robert L. Quirk seeks injunctive relief and monetary damages from defendant Atlanta Stove Works, Inc. In the first cause of action of his two cause complaint, plaintiff alleges defendant violated the Wisconsin Fair Dealership Law, Wis.Stats. § 135.-01 et seq., when it terminated the contractual relationship between the parties in March of 1980. In his second cause of action, plaintiff alleges defendant breached the parties' contract and has been unjustly enriched as a result of its refusal to pay plaintiff all commissions he claims are due and owing to him.

Several motions are currently pending before the Court. Defendant has moved for dismissal of plaintiff's complaint on the theory that plaintiff has failed to join an indispensable party. Alternatively, defendant has moved for summary judgment against plaintiff on both causes of action. Finally, plaintiff has filed a motion for an order compelling defendant to answer certain unanswered interrogatories. These motions are the subject of this memorandum and order.

### I. Background

Defendant is a Georgia corporation which manufactures wood burning stoves, cast iron furniture, and cookware for sale throughout the United States. In 1970, and most recently on April 17, 1979, plaintiff, a Wisconsin resident, entered into a written agreement with defendant in which he agreed to be defendant's exclusive sales representative in a territory consisting of parts of Wisconsin, Iowa, Illinois and upper Michigan. Under the terms of the 1979 agreement, plaintiff was compensated for his sales efforts on a commission basis, the amount being related to the volume of each product sold and shipped. Plaintiff also received a $1,000.00 per month draw (later increased to $1,500.00 per month) which defendant deducted from earned commissions before bonuses. In addition, defendant supplied plaintiff with a car.

The agreement between the parties specifically allowed for termination by either party upon thirty (30) days' notice. In addition, it stated that, in the event of termination, plaintiff would be paid commissions on all orders shipped by defendant through the termination date, but that no commissions would be paid on orders shipped after the termination date.

As defendant's sales representative, plaintiff solicited purchase orders for defendant's products from retail outlets within his territory. Although the plaintiff conducted the sales arrangements, he did not sell directly from stock. Once sales were completed, plaintiff performed various customer service functions designed to rectify delivery problems and any difficulties with the merchandise.

Plaintiff also promoted the defendant's products by attending local trade and sales shows. Defendant provided plaintiff with sample items to display and distribute at these shows, including stoves, catalogs, price lists and sales literature. All items bore defendant's trade name or logotype. Plaintiff also stocked sample merchandise for display at the customers' places of business.

On or about March 1, 1980, Jack Miller, the marketing manager for defendant, orally informed plaintiff he would be terminated. Mr. Miller avers, in his affidavit, that he told plaintiff the dismissal was to be effective March 31, 1980. Plaintiff, in his affidavit, does not deny this but merely asserts he was not given 90 days' notice.

Mr. Miller also avers that plaintiff's termination date was changed to April 30, 1980 and that he confirmed this in writing. Plaintiff avers defendant did not confirm his termination in writing.

It is undisputed that on May 27, 1980, defendant sent plaintiff a check for $3,673.09 made out to "Bob Quirk in full and final payment for services rendered per agreement." Accompanying this check was a memorandum entitled "Final Payment of Earning Per Contract." The message portion of the memorandum stated:

Bob—

Attached are Comm statement for shipments thru April—

Also attached is the comm payment schedule from Jan. thru April. I have deducted the draw paid of 1500/month— leaving earnings over draw of $4,791.83

(Not a bad month!)

Regards

Jack

In his affidavit, plaintiff states that he "cashed defendant's alleged 'full payment check' ... under protest with rights reserved and does not accept the check as full payment for all commissions due and owing plaintiff from defendant." (Plaintiff's affidavit, page 7.)

According to Mr. Miller, defendant received the check it sent to plaintiff back from the drawee bank with the indication that it had been presented for payment and paid. Mr. Miller avers that, when the check was returned, the "full and final payment" language on the front of the check was crossed out. He further avers that at no time after May 27, 1980, did plaintiff secure from him or any other person in a position of authority at defendant, authorization, permission, or agreement to change the terms upon which the check was tendered. Plaintiff, in his affidavit, does not address these averments.

Defendant subsequently entered into a written contract with Michael Riley, another Wisconsin resident, who became its exclusive sales representative in the territory previously occupied by plaintiff. The provisions of defendant's agreement with him were similar to those contained in the contract between the plaintiff and the defendant.

In the complaint filed December 8, 1980, the plaintiff alleges that his contractual relationship with the defendant constituted a dealership as defined by the Wisconsin Fair Dealership Law, Wis.Stat. § 135.01 et seq. The plaintiff contends his termination violated the statutory provisions of this act in three respects: he was not provided ninety days' notice of termination; he was allowed no time to correct any deficiencies in his performance of the agreement, although the statute requires a sixty-day time period for such purpose; and his termination was not for "good cause" as required by the statute. Plaintiff also alleges that defendant breached their agreement by refusing to pay commissions for sales booked by him prior to the date of termination, and for products sold prior to that date but shipped later. Plaintiff further asserts that the defendant has been unjustly enriched as a result of his uncompensated efforts.

Defendant has moved to dismiss the plaintiff's complaint on the basis that the plaintiff's successor, Michael Riley, is an indispensable party to this action under Rule 19 of the Federal Rules of Civil Procedure. It contends joinder of Mr. Riley is not feasible and, therefore, dismissal is warranted. In light of the Court's resolution of defendant's motions for summary judgment, it will not be necessary for the Court to address this motion.

In its alternative motion, defendant contends that chapter 135 is inapplicable to the instant case because the parties' relationship was not a "dealership" within the statutory meaning of that term. Defendant has also moved for partial summary judgment on the plaintiff's breach of contract and unjust enrichment claims.

Finally, plaintiff has filed a motion for an order compelling defendant to answer certain interrogatories.

## II. *Motion for Summary Judgment Fair Dealership Law*

Defendant's motion for summary judgment as to plaintiff's first cause of action is based on its contention that the relationship between the parties was an employer/employee relationship rather than a grantor/dealer relationship. Because the Wisconsin Fair Dealership Law does not apply to employer/employee relationships, defendant maintains, summary judgment is appropriate.

Plaintiff views the parties' relationship differently. He contends he did have a dealership relationship with defendant and, therefore, chapter 135 does apply.

Section 135.02 of the Wisconsin Fair Dealership Law defines a dealership as follows:

'Dealership' means a contract or agreement either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services or wholesale, retail, by lease, agreement or otherwise.

Recently, in *Foerster v. Atlas Metal Parts Co.*, 105 Wis.2d 17, 313 N.W.2d 60 (1981), the Wisconsin Supreme Court provided considerable guidance to courts faced with the issue of whether a party is a dealership under chapter 135. In that case, the plaintiff was a manufacturer's representative who did not participate in the process of preparing estimates or quotes; did not approve, accept or reject orders; did not negotiate terms or credit arrangements; did not purchase or keep an inventory of the manufacturer's products; and did not bill customers or participate in collections. In rejecting plaintiff's claim that his relationship with the defendant constituted a dealership within the meaning of the Wisconsin Fair Dealership Act, the court stated:

The description of the businesses which the Fair Dealership Law was intended to cover indicates that the law was meant to protect only those small businessmen who make a substantial financial investment in inventory, physical facilities or "good will" as a part of their association with the grantor of the dealership and is, thus, consistent with common or accepted perceptions of the words franchise or dealership. It is these types of businesses whose economic livelihood would be imperiled by the termination of their dealership without good cause and adequate notice. None of the businesses mentioned in this description resembles the type of manufacturer's representative business involved in this case. *Id.* at p. 24, 313 N.W.2d 60.

Applying the *Foerster* rationale to the case at bar, the Court has little difficulty in rejecting plaintiff's contention that his relationship with defendant comes under the purview of chapter 135. The record before the Court fails to disclose that plaintiff has ever made any financial investment in inventory, physical facilities or "good will" as part of his association with defendant. As a representative for defendant, plaintiff's role was to solicit customers for defendant's products. He did not maintain any inventory of defendant's products, ex-

cept for samples. Although he did not receive commissions on sales to nonpaying customers, he was not required to extend credit, or to assume the risk of late payment or non-payment by defendant's customers. Price, discounts and all other terms on sales of defendant's products were set by defendant.

Equally compelling to the Court in rejecting plaintiff's contention that he was a dealer is the nature of his employment relationship with defendant. Under the terms of the parties' agreement, defendant agreed to pay plaintiff a monthly draw of $1,000.00 (later increased to $1,500.00) during those months his commission on sales did not surpass the draw amount. In addition, the defendant withheld taxes from plaintiff's paychecks and provided him with a company car. Defendant also contributed to the state unemployment insurance and workmen's compensation insurance funds as result of plaintiff's employment. In light of the nature of the parties' relationship, it is difficult to characterize plaintiff as anything but an employee of defendant.

Based on the foregoing, the Court holds that plaintiff's relationship with defendant did not come under the purview of chapter 135 and GRANTS defendant's motion for summary judgment as to plaintiff's first cause of action.

### III. *Motion for Summary Judgment Contract Claim*

The April 1979 agreement between the parties provides, in relevant part, the following:

> The contract may be terminated on 30 days notice by either party and in the event of such termination, you will be paid commissions on all orders shipped by the company through such termination date.

Plaintiff contends defendant breached this contractual provision by refusing to pay him any commissions for goods sold prior to the date of the attempted termination but shipped after termination. He further contends he has not been paid any commissions for any sales booked subsequent to the date of the attempted termination.

Defendant asserts that it gave plaintiff 30 days' notice of his dismissal and that it paid plaintiff all commissions earned by him on orders shipped up to the termination date. Defendant further contends plaintiff's contract claim is barred by accord and satisfaction. Specifically, defendant argues that plaintiff, by cashing the final commission check sent to him, waived any claim he might otherwise have had for further commission payments.

■ The Court need not determine whether defendant gave plaintiff the proper 30-day notice of termination or determine what commissions were actually due plaintiff. Because plaintiff accepted and cashed the final commission check sent to him, the Court agrees with defendant that plaintiff has waived any claim he might otherwise have had for further commissions.

In *Hoffman v. Ralston Purina Company*, 86 Wis.2d 445, 273 N.W.2d 214 (1979), the Wisconsin Supreme Court held that, when a check is offered in full settlement of a disputed claim and the creditor remains silent but retains the uncashed check for an unreasonable time, his silence and acquiescence are manifestations of assent which give rise to an accord and satisfaction. In reaching that decision, the Court stated:

> Actions of the offeree can constitute acceptance even when accompanying words express a contrary intent. When a creditor receives a check offered in full settlement of an obligation and cashes the check, but simultaneously writes to the debtor that he refuses to accept the check as in full satisfaction but will apply it only in reduction of the debt, the action of cashing the check will be considered an acceptance of the offer. *Id.* at 454, 273 N.W.2d 214.

The Wisconsin Court of Appeals employed similar reasoning in *Van Sistine v. Tollard*, 95 Wis.2d 678, 291 N.W.2d 636 (Wis.App.1980) where it held that three checks presented by a debtor to a creditor to satisfy a disputed claim constituted an offer. The court held that the creditor accepted the offer by promptly cashing the

checks even though he endorsed the checks "under protest & without prejudice."

Similarly, in the case at bar, defendant offered to settle its obligation with plaintiff by sending him the "full and final payment" check. Plaintiff accepted that offer by cashing the check, even though his actions expressed a contrary intent.

Based on the foregoing, defendant's motion for summary judgment as to plaintiff's contract claim must be and hereby is GRANTED.

### IV. *Motion for Summary Judgment Unjust Enrichment Claim*

■ The elements of a cause of action in equity for unjust enrichment consist of: (1) a benefit conferred upon defendant by plaintiff; (2) appreciation or knowledge by defendant of benefit; and (3) acceptance or retention by the defendant of benefit under circumstances making it inequitable for the defendant to retain benefit without payment of its value. *Puttkammer v. Minth*, 83 Wis.2d 686, 266 N.W.2d 361 (1978).

Plaintiff attempts to meet these three elements through the following arguments. First, he contends he improved defendant's position by making sales prior to the termination of his contract, even though the goods may not have been shipped until after his termination. Second, he maintains defendant was well aware of the activities he took on its behalf and received the direct benefits from those activities. Third, he argues that defendant, by accepting and retaining the benefits it received as a result of plaintiff's activities, has been enriched at his expense.

■ Plaintiff's arguments are unpersuasive. Defendant hired him as a sales representative and paid him commissions pursuant to the terms of their agreement. Plaintiff accepted those commissions and waived any rights he had for commissions defendant did not pay him. Under these circumstances, the Court cannot say defendant was unjustly enriched.

Based on the foregoing, defendant's motion for summary judgment as to plaintiff's unjust enrichment claim must be and hereby is GRANTED.

### V. *Motion to Compel*

■ The Court has examined the interrogatories defendant did not answer to plaintiff's satisfaction. Because the Court is of the opinion that any answers given by defendant to these interrogatories would not affect the Court's decision on defendant's summary judgment motions, it DENIES plaintiff's motion as MOOT.

### VI. *Summary*

Based on the foregoing, the Court GRANTS defendant's motion for summary judgment on both causes of action and ORDERS this action DISMISSED with prejudice.