LES MOISE, INC., Plaintiff-Appellant,

v.

ROSSIGNOL SKI CO., INC., Defendant-Respondent.†

Court of Appeals

*No. 83–300. Submitted on briefs September 15, 1983.— Decided November 11, 1983.*
(Also reported in 342 N.W.2d 444.)

† Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Charne, Glassner, Tehan, Clancy & Taitelman, S.C.*, with *William E. Glassner, Jr.*, of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Foley & Lardner*, with *Steven E. Keane* and *Michael A. Bowen* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

DECKER, J.  This appeal arises from an alleged violation of ch. 135, The Wisconsin Fair Dealership Law. Les Moise, Inc., (Moise) appeals from an order dismissing its complaint as barred by the statute of limitations. Moise contends that, under sec. 893.93(3)(b), Stats., the statute of limitations should be deemed to begin to run at the actual time of termination of the ski supply agreement rather than at the time of notice of termination. We agree and reverse the order of the trial court and remand for further proceedings.

Moise is a retailer of sports equipment. It carried the skis of respondent Rossignol Ski Co. (Rossignol) for some twenty-five years. On January 16, 1980, Rossignol notified Moise that the written agreement between them would be terminated upon the expiration date of that agreement, May 21, 1980. On April 14, 1981, Moise filed the original summons and complaint in this action. Rossignol filed a motion to dismiss on the ground that the complaint was barred by sec. 893.93(3)(b), Stats., the applicable one-year statute of limitations for an action commenced under ch. 135, Stats., the Wisconsin Fair Dealership Law. The trial court granted the motion, holding that the statute of limitations began to run from January 16, 1980, the date of notice, rather than from

May 21, 1980, the effective date of termination. In this case the record reflects that the date of termination was the date of actual injury to Moise.

The question of the starting time for the statute of limitations to run under ch. 135, Stats., is apparently one of first impression in Wisconsin. Both parties on appeal, as well as the trial court in its memorandum decision, rely principally upon two federal cases. We will discuss both.

The case which the trial court held to be controlling is *Emich Motors Corp. v. General Motors Corp.*, 229 F.2d 714 (7th Cir. 1956). There, Emich was given notice on April 7, 1936, that General Motors would cancel and terminate the selling agreement "effective three months after the delivery of this notice . . ." *Id.* at 719. This date was later extended to September 1, 1936. *Id.* The seventh circuit held that the April 7 date set the statute of limitations running because the notice received on that date terminated Emich's "contract right to receive cars." *Id.* at 720.

What distinguishes *Emich* from the case we consider here is a clause in the franchise agreement between Emich and General Motors:

"Any cancellation or termination of this agreement shall also operate as a cancellation of all orders for standard motor vehicles, chassis, parts, accessories or service and other equipment *which may not have been shipped prior to receipt of notice of such cancellation or termination by Dealer. . . .*" [Emphasis in original.]

*Id.*

This clause, which the seventh circuit noted "as meaning that notice of intention to cancel terminated the dealer's right to receive cars," *id.*, effectively made notice of termination the time of actual injury as well. As such, *Emich* is different from this case because here, the notice of termination and the effective date of actual

injury were two different dates. *Emich,* therefore, is inapposite.[1]

We are more persuaded by the decision of the ninth circuit in *Marquis v. Chrysler Corp.,* 577 F.2d 624 (9th Cir. 1978). There, Marquis had a franchise agreement with Chrysler which gave Chrysler the right to terminate the dealership on ninety days' notice upon the dealer's failure to perform various obligations. *Id.* at 626. On January 5, 1968, Chrysler gave Marquis notice that his dealership was to be terminated in ninety days. *Id.* at 628. Marquis sued on April 2, 1971, within the applicable three year statute of limitations if the date of actual termination were applied to start the statute running, but beyond it if the date of notice were applied. *Id.* at

---

[1] We note that a subsequent seventh circuit case, *2361 State Corp. v. Sealy, Inc.,* 402 F.2d 370, 373–74 (7th Cir. 1968) discussed *Emich Motors Corp. v. General Motors Corp.,* 229 F.2d 714 (7th Cir. 1956), in a fashion consonant with our reading of *Emich:*

Defendants rely on our decision in Emich Motors Corporation v. General Motors Corp. In that case, plaintiff and defendant had a contract under which defendant sold cars to plaintiff. Defendant, allegedly in furtherance of an unlawful conspiracy, gave notice to plaintiff, terminating the contract and plaintiff's contract right to receive cars, although defendant continued to supply cars to plaintiff for several months. This court held that plaintiff's cause of action arose upon the cancellation of the contract and the rights dependent upon it. In the instant case, however, there was no contract between Ward and Brandwein, and the notice was only a statement that in the future Ward would cease buying. The notice itself did not destroy or injure Brandwein's rights. The cause of action, if any, accrued in the summer of 1961 when Brandwein's business was injured by the cessation of Ward's purchases. [Footnote omitted.]

While we recognize that the lack of a contract was central to the *Sealy* rationale, we believe that *Emich* is properly characterized therein as standing for the proposition that notice of cancellation acted as a cancellation of Emich's *present contract right* to receive cars, regardless of General Motor's gratuitous continuation as supplier.

629. Chrysler argued that *Emich* required that the date of notice started the statute to run; the ninth circuit disagreed:

> *Emich,* however, is distinguishable and does not stand for the general proposition that the Dealers' Act limitations period runs from the date of the termination notice. In *Emich* the notice canceled the dealer's contract right to receive cars from the manufacturer. It coincided with actual injury to the dealer and, after giving such notice, "General Motors could not prevent [the dealer] bringing action at that time for the unlawful breach." 229 F.2d at 720.[2]
> There is no evidence that notice of termination immediately diminished Marquis' rights under the contract.

*Id.*

Here, as in *Marquis,* there is no evidence that notice of termination immediately diminished Moise's rights under the contract. While Moise received its termination notice on January 16, 1980, Moise's answers to Rossignol's interrogatories indicate that Moise purchased products from Rossignol at least as recently as March 10, 1980. Rossignol attempts to distinguish *Marquis* by stating, "to the extent abstract impairment of theoretical contractual rights has any relevance to this problem, such impairment occurred here on the date notice of termination was received, just as it did in *Emich.*" We do not concur in Rossignol's interpretation of *Emich,* nor do we believe that any of the cases herein discussed are concerned with the "abstract impairment of theoretical con-

---

[2] While we agree with the quoted language from *Marquis v. Chrysler Corp.,* 577 F.2d 624, 629 (9th Cir. 1978), to the extent that actual injury at time of termination rather than notice of impending termination is the keystone for setting the statute of limitations running, we do not concur in the further statement made there which implies that the time at which an action *could* be brought is, to whatever extent, determinative of the date upon which the statute of limitations should be deemed to begin to run. This position is explained later in this opinion.

tractual rights." Rather, they all concern themselves with present actual rights.[3]

We are guided in our actions here by a recent Wisconsin Supreme Court case, *Hansen v. A.H. Robins Co.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983).[4] There, our supreme court reconsidered the rule that tort claims accrue on the date of injury. *See, e.g., Peterson v. Roloff,* 57 Wis. 2d 1, 203 N.W.2d 699 (1973). The court weighed the conflicting public policies raised by the statute of limitations: the discouraging of stale and fraudulent claims versus the allowing of diligent, meritorious claimants an opportunity to seek redress for injuries sustained. *Hansen, supra,* at 558, 335 N.W.2d at 582. The court concluded that "the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions." *Id.* at 559, 335 N.W.2d at 582. The court then created the following rule that "all tort actions other than those already gov-

---

[3] We take note of a seventh circuit case, *Hammil v. Rickel Mfg. Corp.,* Nos. 83–1249 & 83–1463 (7th Cir. Oct. 11, 1983), too recent to have been argued in the briefs at bar. There, the court of appeals affirmed a district court's judgment under ch. 135, Stats. The district court held that, in a claim under § 135.04, Stats., (the notice provision), the statutory violation occurs when a defective notice is sent to a dealer, but that, in a claim under § 135.03, Stats., (the good cause provision), the violation does not occur until actual termination. Slip. op. at 3.

Although Moise here pleaded claims under both statutes, neither the record nor the briefs on appeal appears to distinguish between the two claims; rather the gravamen throughout is a violation of ch. 135, Stats. We are unpersuaded that a distinction, for statute of limitation purposes, between claims brought under these two provisions is either productive or desirable. To have the same statute of limitations be triggered at different times in the same action under ch. 135 is, we believe, an invitation to multiplicity of lawsuits and is inconsonant with the chapter's express purpose of providing additional protections to dealers.

[4] *Hansen* was decided approximately six months after the trial court decided this case.

erned by a legislatively created discovery rule . . . shall accrue on the date the injury is discovered or with reasonable diligence should be discovered . . . ." *Hansen, supra,* 113 Wis. 2d at 560, 335 N.W.2d at 583.

The *Hansen* court acknowledged that while a change of the statute of limitations is peculiarly a question of policy which should be left to the legislature, *id.* at 556, 335 N.W.2d at 581, the court reserved to the judiciary the power to establish when claims accrue for statute of limitation purposes. *Id.* at 559–60, 335 N.W.2d at 582. The wisdom and propriety of the court in reserving and exercising that power was presaged by Professor Corbin in discussing statutes of limitations and anticipatory repudiations:

This is not injustice; nor is it an unjustifiable nullification of the legislative will. In passing a statute of limitations, the legislature cannot foresee all the cases to which it may be applied. "Accrual of the cause of action" has not one eternal and exclusively correct meaning, ordained by God or by the legislature. There is no "infallible logic" that compels one application rather than another.

4 A. Corbin, Corbin on Contracts § 989 (1951).

In adopting the discovery rule in tort claims, the *Hansen* court augmented the earlier and oft-cited rule for a cause of action accruing which was first set forth in Wisconsin in *Barry v. Minahan,* 127 Wis. 570, 573, 107 N.W. 488, 490 (1906) : "A cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." [Citations omitted.] Obviously, a present but undiscovered injury in tort satisfies the *Barry* rule and, in the past, has yielded extremely harsh results. *See Hansen, supra* at 555–56, 335 N.W.2d at 580–81. The *Hansen* discovery rule, therefore, ameliorates this harshness by augmenting the *Barry* rule.

We believe we are faced with a question which, while the converse of that in *Hansen,* is equally problematic but equally susceptible to the same kind of policy analysis. In *Hansen,* the supreme court modified the law to compensate for the injustices caused when a tort claimant had an injury but no notice of it. Conversely, we here have a situation where a plaintiff has notice, but has not yet suffered an injury. In spite of the *Barry* rule, which might be read to require, in this case, the statute to begin to run upon notice without injury, we feel obliged, for a number of reasons, to depart from such an application.

First, the express public policy behind ch. 135, Stats., makes it clear that the chapter is remedial and is to be liberally construed in favor of dealers. Section 135.025, Stats., reads in pertinent part:

Purposes; rules of construction; variation by contract. *(1) This chapter shall be liberally construed and applied to promote its underlying remedial purposes and policies.*
*(2) The underlying purposes and policies of this chapter are:*
(a) *To promote* the compelling interest of the public in fair business relations between dealers and grantors, and in *the continuation of dealerships on a fair basis;*
(b) *To protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships;*
(c) To provide dealers with rights and remedies in addition to those existing by contract or common law;

. . . .

[Emphasis added.]

We do not believe that a statutory scheme such as ch. 135, Stats., which has the explicit purpose of protecting dealers against unfair treatment by grantors and of providing them with rights and remedies beyond common law and contract, should be construed to put dealers in a

tight corner when they believe they have been terminated without good cause.

Second, where, as here, notice of termination is not immediately accompanied by any actual injury or detriment under the contract, starting the clock to run at date of notice would produce at least two untoward results. If the time between date of notice and date of termination were greater than one year, a dealer would be absolutely obliged to bring suit *before* any injury occurred or else be time-barred. Also, dealers who brought actions before they were actually injured would be effectively foreclosing their chances of persuading grantors to change their minds about termination. This would frustrate the express statutory purpose of "continuation of dealerships on a fair basis . . . ."

Third, because of the relatively short statutory period involved, the "stale claim" rationale behind statutes of limitation generally is, on balance, less weighty a consideration here as compared to the injustice of barring meritorious claims. *See Hansen, supra,* at 558, 335 N.W. 2d at 582.

Finally, although neither the pleadings nor the briefs on appeal characterize the action as either tort or contract, we believe that an examination of tort and contract principles is helpful to our analysis and leads to our conclusion that the date of actual injury is the better and more appropriate date from which the statute ought to be deemed to run.

Until the *Hansen* decision, addressed earlier, tort case law in Wisconsin was clear on the point that a tort claim was not capable of enforcement until both a negligent act and an accompanying injury have occurred. *Holifield v. Setco Industries, Inc.,* 42 Wis. 2d 750, 756, 168 N.W.2d 177, 180 (1969). Given the discovery rule set forth in *Hansen,* we believe that the quoted language from *Holifield* is now incomplete. In those cases where the injury

is not immediately discoverable through reasonable diligence, the statute of limitations, absent an express and contrary legislative directive, will not be deemed to begin to run until discovery. In any event, *Hansen* notwithstanding, Wisconsin does not recognize an action in tort *before* injury has occurred. *See Hansen, supra* at 554, 335 N.W.2d at 580.

Turning to contract, we believe that the facts of the case at bar make it akin to an action arising from an anticipatory repudiation. An injured party is given an election whether he will regard an anticipatory repudiation as final.[5] *See* Restatement (First) of Contracts § 322 Comment a (1932).[6] Although some Wisconsin cases have treated an anticipatory repudiation as a breach of the contract, *see, e.g., Pierson v. Dorff,* 198 Wis. 43, 49, 223 N.W. 579, 581 (1929), other Wisconsin cases recognize the right of the injured party to bring suit upon repudiation or wait until the performance comes due:

The effect of such renunciation by the one is to give the other party an opportunity to then treat it as thereby canceled or nevertheless elect to hold and consider the contract still in force and insist upon performance by the one so renouncing, or tender performance on his own part and thereafter seek the appropriate remedy for either. But there must be an election in some manner of one or the other alternative.

[5] We note that there is nothing in the record to indicate that Moise treated the repudiation itself as a breach or otherwise took any counter-contractual measures until after the termination itself.

[6] The Reporter's Note to Restatement (Second) of Contracts § 253 (1981) states that "Former § 322, [Restatement (First)] on the time when the period of the statute of limitations begins to run in the case of 'anticipatory breach,' is also omitted because this Restatement does not attempt to state rules on when that period begins to run in other situations."

*Washburn-Crosby Co. v. Kubiak,* 175 Wis. 291, 295, 185 N.W. 162, 163 (1921) ; *see also Stolper Steel Products Corp. v. Behrens Manufacturing Co.,* 10 Wis. 2d 478, 103 N.W.2d 683 (1960) [and cases cited therein] ; *Young v. Grosnick,* 256 Wis. 225, 40 N.W.2d 382 (1949) [and cases cited therein].

Given a plaintiff's elective right under anticipatory repudiation to either sue upon repudiation or to wait until the performance comes due, we believe that, in a case like this one, it leads to the conclusion that the proper date for the statute to begin running is the date of actual injury, in this case, the date of termination. The logic of this is supported by Comment d to Restatement (First) of Contracts § 318 (1932) :[7]

In case of an anticipatory repudiation, however, withdrawal of it before either an action has been brought, or other change of position made by the other party to the contract nullifies all effects of the breach (§ 319). So likewise, if no action is brought, the Statute of Limitations will not run on the right of the injured party from the time of the repudiation but only from the time when there is failure to perform a promise (§ 322).

Even more pertinent and persuasive is the following discussion of anticipatory repudiation and the statute of limitations from Professor Corbin:

*There is no necessity for making the statutory period of limitation begin to run against the plaintiff until the day fixed by the contract for the rendition of performance, at least unless the plaintiff definitely elects to regard the anticipatory repudiation as a final breach.* It is generally said that he need not so elect and that he may properly wait until the time that performance was due, before regarding the contract as broken. He is not justified in forbearing to take steps that will mitigate his

---

[7] Comment d to § 318 was not altered by the 1948 Supplement to the Restatement (First) of Contracts, although § 318 itself was. That alteration is immaterial to our discussion here. *See also* note 5, *supra.*

injury; but the defendant ought not to be allowed to complain at the delay in bringing action against him. *For the purpose of determining when the period of limitation begins to run, the defendant's non-performance at the day specified may be regarded as a breach of duty as well as the anticipatory repudiation. The plaintiff should not be penalized for leaving to the defendant an opportunity to retract his wrongful repudiation; and he would be so penalized if the statutory period of limitation is held to begin to run against him immediately.* [Emphasis added.]

4 A. Corbin, Corbin on Contracts § 989 (1951).[8] To allow an election between two dates for bringing suit

---

[8] The following cases from other jurisdictions quote this principle from Corbin with approval: *e.g., Brewer v. Simpson,* 349 P. 2d 289, 302–03 (Cal. 1960); *Trypucko v. Clark,* 191 Cal. Rptr. 165, 169 (Cal. Super. 1983); or cite it with approval: *e.g., Penn-Ohio Steel Corp. v. U.S.,* 354 F.2d 254, 273, n. 35 (Ct. Cl. 1965); *State Employees' Ass'n v. Belknap County,* 448 A.2d 969, 973 (N.H. 1982); *City of Algona v. City of Pacific,* 667 P.2d 1124, 1127 (Wash. Ct. App. 1983). Other courts have similarly concluded that the doctrine of anticipatory repudiation has no effect on the running of the statute of limitations: *e.g., White v. Prenzler,* 131 N.E.2d 540, 543 (Ill. 1956); *Kozasa v. Guardian Elec. Mfg. Co.,* 425 N.E.2d 1137, 1142 (Ill. App. 1981); *Simpson v. Scott,* 53 S.E. 2d 21, 24 (Va. 1949).

We also note that the pertinent principle from § 989 was cited with approval in the dissent of Justices Brennan and Marshall to the 6-to-3 *per curiam* opinion, *Chardon v. Fernandez,* 454 U.S. 6, 9 (1981); *reh'g denied,* 454 U.S. 1166 (1982). While *Chardon,* which involved the application of Puerto Rico's statute of limitations to a 42 USC § 1983 action in federal court, *id.* at 7, does not govern the case before us, we point out that the supreme court's focus upon the "operative decision" and notice of that decision as being the key to the statute of limitations, *id.* at 8, has "no analogue in customary principles of limitations law." *Id.* at 9 [J. Brennan, dissenting.] We further agree with Justice Brennan that "lawsuits . . . should not be filed until some concrete harm has been suffered, and until the parties, and the forces of time, have had maximum opportunity to resolve the contro-

but to start the statute running upon the earlier of the two would, especially where the statute of limitations is relatively short, serve neither sense nor justice, nor comport with the ameliorative and remedial purposes of the doctrine of anticipatory repudiation and The Wisconsin Fair Dealership Law.

We now address one further point made by Rossignol, that Rossignol could not have prevented Moise from bringing suit upon notice and that, therefore, that should be the date, under the *Barry* rule, upon which the statute should begin to run. While the point is, to some extent, hypothetical because Moise did not in fact choose to bring suit before injury, we acknowledge, especially in the light of our discussion of anticipatory repudiation, that Moise could have brought suit upon that date. This does not persuade us, however, that the date of notice should set the statute to running. As we pointed out earlier, accrual of the cause of action does not have one eternal and exclusively correct meaning. Our supreme court recognized that in *Hansen* and we recognize it here.

For the above reasons, we determine that, in a ch. 135, Stats., action, if the dates of actual injury and of notice

---

versy." *Id.* We believe that the logic of the majority opinion in *Chardon* runs counter to that in this opinion and that of *Hansen*.

We distinguish a case related to *Chardon* and used by the *Chardon* majority to bolster its position: *Delaware State College v. Ricks*, 449 U.S. 250 (1980). There, Ricks was a college professor who had formally been denied tenure but who was subsequently offered a "terminal" one year contract. *Id.* at 252-53. The Supreme Court rejected Ricks' argument that the statute of limitations began to run only when his "terminal" contract expired, *id.* at 257-58, and held that the time commenced "at the time the tenure decision was made and communicated to Ricks." *Id.* at 258 [Footnote omitted.] The rationale for this position was that the denial of tenure and notice thereof constituted a present violation. *See id.* As such, *Ricks* is distinguishable from the case before us.

are different, the statute of limitations is set running from whichever date is later, regardless of a claimant's ability to bring suit upon the earlier date. In making this rule reflexive to accommodate not only the circumstance presented here but also the possible circumstance where the injury could occur before the dealer has or should have had notice of it through the exercise of reasonable diligence, we seek a thorough comportance with both the letter and spirit of *Hansen*. We believe that, by our doing so, justice is served, harsh results are obviated, and the remedial purposes of ch. 135 are made tangible.

Accordingly, we hold that Moise's complaint was not barred by sec. 893.93 (3) (b), Stats. We therefore reverse the order of the trial court dismissing the complaint and remand for further proceedings not inconsistent with this opinion.

*By the Court.*—Order reversed and cause remanded.